UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN PUTRUS and
ALEXANDER PUTRUS,

     Plaintiffs,                 Case No.: 21-11312

-v-                            Hon. _____

WILLIAM MORRISON,
RADAMES BENITEZ, JOI GAINES,
QUINTON JACKSON,
MICHAEL MOSLEY, KEVIN ZAROSLY
DAVID MEADOWS, LAMAR WILLIAMS,
DETROIT POLICE OFFICER D. STEWART,
and PHILIP RODRIGUEZ, in Their Individual
Capacities, and CITY OF DETROIT,

     Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Steven Putrus and Alexander Putrus, by their attorneys, Giroux Trial Attorneys, P.C., for their Complaint against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1.    This is a civil action for money damages brought pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and the Fourth Amendment to the United States Constitution against Defendants, William Morrison, Radames Benitez, Joi Gaines, Quinton Jackson, Michael Mosley, Kevin Zarosly,

David Meadows, Lamar Wiliams, Detroit Police Officer D. Stewart, and Philip Rodriguez, in their individual capacities, as well as the City of Detroit.

    2.    This court has jurisdiction over Plaintiffs' claims presented in this Complaint based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343.

    3.    Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. §1391(b). The unlawful actions alleged in this Complaint took place within the City of Detroit, in Wayne County, which is located within the Southern Division of the Eastern District of Michigan.

    4.    The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

## **PARTIES**

    5.    The Plaintiff, Steven Putrus, is, and at all times relevant to this action was, a resident of the Township of West Bloomfield, County of Oakland, State of Michigan.

    6.    The Plaintiff, Alexander Putrus, is, and at all times relevant to this action was, a resident of the Township of West Bloomfield, County of Oakland, State of Michigan.

    7.    Upon information and belief, Defendant, William Morrison, is a citizen of the State of Michigan and was, at all times relevant to this action,

employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

8.     Upon information and belief, Defendant, Radames Benitez, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

9.     Upon information and belief, Defendant, Joi Gaines, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

10.    Upon information and belief, Defendant, Quinton Jackson, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

11.    Upon information and belief, Defendant, Michael Mosley, is a citizen of the State of Michigan and was, at all times relevant to this action,

employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

12.   Upon information and belief, Defendant, Kevin Zarosly, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

13.   Upon information and belief, Defendant, David Meadows, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

14.   Upon information and belief, Defendant, Lamar Williams, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department and was assigned to the Narcotics Enforcement Section/Major Violators Unit.

15.   Upon information and belief, Defendant, Officer D. Stewart (#1539), is a citizen of the State of Michigan and was, at all times relevant

to this action, employed as a law enforcement officer by the City of Detroit Police Department.

16.    Upon information and belief, Defendant, Philip Rodriguez, is a citizen of the State of Michigan and was, at all times relevant to this action, employed as a law enforcement officer by the City of Detroit Police Department assigned to the Drug Enforcement Administration Task Force.

17.    At all times relevant to this lawsuit, Defendant City of Detroit ("The City") was a   municipal corporation, duly organized in carrying on governmental functions in the City of Detroit, in Wayne County, Michigan

18.    At the time of the events alleged in this Complaint, Defendants, William Morrison, Radames Benitez, Joi Gaines, Quinton Jackson, Michael Mosley, Kevin Zarosly, David Meadows, Lamar Williams, Detroit Police Officer D. Stewart, and Philip Rodriguez, were at all times acting in their individual capacities within the course and scope of their employment as City of Detroit Police Officers and under color of law.

## **FACTUAL ALLEGATIONS**

### **Plaintiffs' Businesses**

19.    At all times relevant, Plaintiffs leased a business condominium located at 11935 E. Warren Avenue, Detroit, Michigan, which was located in a commercial strip mall known as Park Side Plaza.

20. At all times relevant, Plaintiff Steven Putrus operated a check cashing business known as Cash Point Check Cashing Inc. at 11935 E. Warren Avenue, Detroit, Michigan.

21. At all times relevant, Plaintiff Alexander Putrus operated a cellular phone business known as My Wireless #1012 Inc. at 11935 E. Warren Avenue, Detroit, Michigan.

22. At all times relevant, Plaintiff Alexander Putrus' business sold cellular phones, cellular phone accessories, and accepted bill payments for cellular phone services.

23. At all times relevant, there were large, clear windows across the entire storefront of 11935 E. Warren Avenue as depicted below:



24.    At all times relevant, there were neon-lit signs on the storefront of 11935 E. Warren Avenue that stated "Phone Accessories", "Income Tax Checks", "Check Cashing", "Bill Payment Center" as depicted in the photograph in paragraph 23, *supra*.

25.    At all times relevant, there were signs for Virgin Mobile and Boost Mobile on the front door of 11935 E. Warren Avenue as depicted below:



## **Search Warrants**

26.    On or about October 22, 2018, Defendant Morrison swore to falsified facts in an affidavit in support of a search warrant for several locations, including Plaintiffs' businesses' location at 11935 E. Warren

Avenue, Detroit, Michigan, as well as their personal residences in West Bloomfield, Michigan, for the seizure of various items, including but not limited to "[c]ontrolled substances, imitation controlled substances, suspected narcotics proceeds, firearms, items connected to the sales, possession, manufacture, use, storage, distribution, transportation, delivery, or concealment of controlled substances", as well as [b]ooks, records and tally sheets indicating the sales of controlled substances."

27.    Defendant Morrison's October 22, 2018 affidavit included allegations that, on September 25, 2018, an undercover Detroit Police Officer purchased marijuana from 11931 E. Warren Avenue, which was a unit of the Park Side Plaza strip mall that had no visible address, no signs, no markings, and appeared to be vacant.

28.    Defendant Morrison's October 22, 2018 affidavit included allegations that, on September 26, 2018, a search warrant was executed on the unmarked unit at 11931 E. Warren Avenue, which led to the confiscation of what was alleged to be marijuana and several ecstasy pills, as well as the arrest of Antwan Harper for Delivery of a Controlled Substance.

29.    Defendant Morrison's October 22, 2018 affidavit included allegations that, on October 8, 2018, Defendant Morrison observed

"suspected buyers" enter and exit the unmarked unit at 11931 E. Warren Avenue, observed Antwan Harper open the door of 11931 E. Warren Avenue to greet the persons who entered, observed Antwan Harper "walk back and forth" between the unmarked unit at 11931 E. Warren Avenue and the Plaintiffs' unit next door at 11935 E. Warren Avenue, and observed two persons enter the Plaintiffs' unit at 11935 E. Warren Avenue before entering the unmarked unit at 11931 E. Warren Avenue.

30.   Defendant Morrison's October 22, 2018 affidavit included false allegations from Defendant Benitez that an unregistered, confidential informant stated that "the check cashing unit" at 11935 E. Warren Avenue had been selling heroin for years and that the confidential informant witnessed a person purchase heroin from a heavy-set Arabic male that was behind the counter at that location.

31.   Defendant Morrison's October 22, 2018 affidavit included allegations that, on October 17, 2018, Defendant Morrison witnessed an unidentified, black female in her 40's enter the Plaintiff's business at 11935 E. Warren Avenue, remain inside for "a minute or so" and then leave, which Defendant Morrison speculated was an insufficient amount of time for "a check to be verified and cashed."

32.   Defendant Morrison's October 22, 2018 affidavit included

allegations that, on October 18, 2018, Defendant Morrison witnessed an unidentified, black male in his 60's enter the Plaintiff's business at 11935 E. Warren Avenue, remain inside for "only 30 seconds or so" and then leave, which Defendant Morrision speculated was an insufficient amount of time to "process a check."

33.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that there were no undercover narcotics purchases at 11935 E. Warren Avenue.

34.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that there were no observations of any hand-to-hand drug transactions at 11935 E. Warren Avenue.

35.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that there was a cellular phone business at 11935 E. Warren Avenue.

36.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that the cellular phone business at 11935 E. Warren Avenue sold cellular phone accessories.

37.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that the businesses at 11935 E. Warren Avenue accepted bill payments.

38.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that there was an ATM machine located inside 11935 E. Warren Avenue.

39.    Defendant Morrison's October 22, 2018 affidavit intentionally omitted any facts that would justify short business transactions at 11935 E. Warren Avenue, such as purchases of cellular phone accessories, bill payments, or use of the ATM machine.

40.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that the nature of a check cashing business necessitates that there be substantial sums of cash on the premises.

41.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that there was a large Section 8 housing complex across the street from 11935 E. Warren Avenue.

42.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that it is customary for low-income residents to frequent check cashing businesses to send bill payments, to cash paychecks, and to cash government-issued checks, all of which require the check cashing business to have substantial sums of cash on the premises.

43.    Defendant Morrison intentionally omitted from his October 22, 2018 affidavit that, at all times relevant, Plaintiff Steven Putrus possessed a

current registry card for the Michigan Medical Marihuana Program, which was validly issued by the Michigan Department of Licensing and Regulatory Affairs.

44.    Defendant Morrison's October 22, 2018 affidavit falsely claimed that there was "probable cause that controlled substances and narcotics proceeds will be found in each of the four listed target locations", which included Plaintiffs' business unit at 11935 E. Warren Avenue, each of their personal residences, as well as the unmarked unit at 11931 E. Warren Avenue.

45.    In swearing out his October 22, 2018 affidavit, Defendant Morrison stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material and necessary to the finding of probable cause.

46.    As a result of Defendant Morrison's swearing to the October 22, 2018 affidavit that was based on deliberate falsehood and recklessly disregarded the truth, a search warrant was issued by a 36th District Court Magistrate Judge for the search of several locations, including Plaintiffs' business unit at 11935 E. Warren Avenue and their personal residences.

### October 22, 2018 Raid By Major Violators Unit

47.    On October 22, 2018, the search warrant was executed by the

individual Defendants and other members of the Detroit Police Narcotics Enforcement Section/Major Violators Unit.

48.    Defendant Meadows was the Raid Commander and Officer in Charge of the October 22, 2018 search warrant execution.

49.    During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Benitez was wearing a body camera that recorded video and audio.

50.    During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Benitez made multiple statements that were recorded on his video/audio equipment that the alleged controlled substances located in the business unit were simply "mix" and/or "mixture."

51.    During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Benitez's video/audio equipment recorded statements from an unknown officer that the alleged controlled substances located in the business unit were "cut" (i.e. "cutting agent").[1]

52.    During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Benitez's video/audio equipment recorded Benitez asking another officer about the results of the field testing of the

_____

[1] A cutting agent is a chemical used to "cut" (dilute or adulterate) recreational drugs with something less expensive than the drug itself. https://www.bbc.com/news/magazine-11177126

-13-

mix/mixture/cut substances and that officer responded, "inconclusive." Benitez then stated, "Well, we knew."

53.     During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Morrison was wearing a body camera that recorded video and audio.

54.     During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Morrison made statements that were recorded on his video/audio equipment that the alleged controlled substances located in the business unit were "cut."

55.     During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Gaines was wearing a body camera that recorded video and audio.

56.     During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Gaines made statements that were recorded on her video/audio equipment that the alleged controlled substances located in the business unit were "nothing but cut . . . .That's all it is, is cut."

57.     During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Meadows was wearing a body camera that recorded video and audio.

58.     During the October 22, 2018 search warrant execution at 11935

E. Warren, Defendant Meadows made statements that were recorded on his video/audio equipment that the alleged controlled substances located in the business unit were "cut."

59. During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Zarosly was wearing a body camera that recorded video and audio.

60. During the October 22, 2018 search warrant execution at 11935 E. Warren, Defendant Zarosly made statements that were recorded on his video/audio equipment that the alleged controlled substances located in the business unit were "cut" and said to other officers, "You know it's cut, man."

**Defendants' Deliberate Falsehoods Regarding the "Evidence"**

61. Defendant Meadows signed the October 22, 2018 search warrant tabulation and return for 11935 E. Warren, which listed the following items that were seized:



-15-

62.    Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Meadows knew or should have known that the items that he falsely alleged to be heroin and cocaine in the October 22, 2018 search warrant tabulation and return for 11935 E. Warren were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

63.    On October 22, 2018, Defendant Gaines completed a Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



64.    The marijuana listed on Defendant Gaines' Request for Laboratory Service was not listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

65.    Based on her training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, and as she stated during the raid, Defendant Gaines knew or should have known that the items that she falsely alleged to be cocaine and heroin in her Request for Laboratory Service were not actually controlled substances and were

actually just cutting agents, which are not illegal substances.

66.   In completing her Request for Laboratory Service, Defendant Gaines stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

67.   On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Gaines and maintained that the results were as follows:



68.   Defendant Stewart's preliminary analysis did not indicate that any of the items submitted by Defendant Gaines tested positive for marijuana or heroin.

69.   On October 22, 2018, Defendant Gaines completed a second Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



70.   The marijuana listed on Defendant Gaines' second Request for

Laboratory Service was not listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

71.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the second list items submitted for analysis by Defendant Gaines and maintained that the results were as follows:



72.    On October 22, 2018, Defendant Jackson completed a Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



73.    None of the items listed on Defendant Jackson's Request for Laboratory Service were listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

74.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant

Jackson and maintained that the results were as follows:



75.    On October 22, 2018, Defendant Mosley completed a Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



76.    None of the items listed on Defendant Mosley's Request for Laboratory Service were listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

77.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Mosley and maintained that the results were as follows:



78.   On October 22, 2018, Defendant Zarosly completed a Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



79.   None of the items listed on Defendant Zarosly's Request for Laboratory Service were listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

80.   Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Zarosly knew or should have known that none of the items listed in his Request for Laboratory Service were heroin, cocaine or MDMA and were actually just cutting agents, which are not illegal substances.

81.   On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Zarosly and maintained that the results were as follows:



82.    On October 22, 2018, Defendant Zarosly completed a second Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



83.    None of the items listed on Defendant Zarosly's second Request for Laboratory Service were listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

84.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Zarosly and maintained that the results were as follows:



85.    On October 22, 2018, Defendant Zarosly completed a third Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:



86.    The majority of the items listed on Defendant Zarosly's third Request for Laboratory Service were not listed on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren.

87.    Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Zarosly knew or should have known that the items that he falsely alleged to be controlled substances in his third Request for Laboratory Service were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

88.    In completing each of his Requests for Laboratory Service, Defendant Zarosly stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the arrest,

detention and indictments of Plaintiffs.

89.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Zarosly and maintained that the results were as follows:



90.    On October 22, 2018, Defendant Benitez completed a Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:

91.    Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Benitez knew or should have known that none of the items listed in his Request for Laboratory Service were heroin, cocaine or MDMA and were actually just cutting agents, which are not illegal substances.

92.    On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Benitez and maintained that the results were as follows:



93.    On October 22, 2018, Defendant Benitez completed a second Request for Laboratory Service for the following items that were allegedly seized from 11935 E. Warren:

94.    Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Benitz knew or should have known that none of the items listed in his second Request for Laboratory Service were heroin, cocaine or MDMA and were actually just cutting agents, which are not illegal substances.

95.   In completing each of his Requests for Laboratory Service, Defendant Benitez stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

96.   On October 22, 2018, Defendant Stewart allegedly completed the preliminary analysis of the items submitted for analysis by Defendant Benitez and maintained that the results were as follows:



97.   Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Stewart knew or should have known that none of the items listed in the aforementioned Requests for Laboratory Service submitted by the other Defendant officers were heroin, cocaine or MDMA and were actually just cutting agents, which are not illegal substances.

98.   In completing each of the preliminary analysis reports, Defendant Stewart stated deliberate falsehoods, showed reckless

disregard for the truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

99.   On October 22, 2018, Defendant Meadows completed a 24 Hour Information Sheet on which he listed that the following controlled substances were confiscated during the October 22, 2018 execution of the search warrant at 11935 E. Warren:

| COCAINE | 7,495.2 | GRAMS |
|---|---|---|
| INCONCLUSIVE | 11,514.00 | |
| HEROIN | 2,270.2 | GRAMS |
| MDMA | 5,401.3 | |
| MARIJUANA | 7,818.0 | GRAMS |

100.  Not all of the items listed by Defendant Meadows on the 24 Hour Information Sheet were included on the October 22, 2018 search warrant tabulation and return for 11935 E. Warren that was completed by Defendant Meadows.

101.  Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Meadows knew or should have known that the items that he falsely alleged to be controlled substances were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

102. In completing the 24 Hour Information Sheet, Defendant Meadows stated deliberate falsehoods, showed reckless disregard for the

truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

103.  On October 23, 2018, Defendant Williams accepted custody and control of the evidence that was seized and recorded by Defendant Zarosly during the October 22, 2018 execution of the search warrant at 11935 E. Warren.

104.  Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Williams knew or should have known that the items that Defendant Zarosly falsely alleged to be controlled substances were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

105.  On or about October 23, 2018, Defendant Morrison swore to falsified facts in an affidavit in support of a search warrant for Plaintiffs' prisoner property bags and Plaintiffs' businesses' location at 11935 E. Warren Avenue, Detroit, Michigan, seeking to seize and search any cellular phones, computers, digital video recorder or electronic devices for photographs, video, call logs, text messages or other data as part of a narcotics investigation.

106.  Defendant Morrison's October 23, 2018 affidavit falsely stated

that, on October 22, 2018, Plaintiffs "were found to be in possession of a total of approximately 12 kilograms of suspected cocaine, heroin and fentanyl and over $400,000 in narcotics proceeds."

107.  Defendant Morrison knew or should have known that the items that he falsely alleged to be cocaine, heroin and fentanyl were not actually controlled substances and were actually just cutting agents, which are not illegal substances, because, as he stated in his October 23, 2018 affidavit, he "has received numerous hours of training in narcotics identification", "is also familiar with controlled substances in their various forms, packaging and distribution tactics" based on years of field experience, and "is able to identify such controlled substances by sight."

108.  In swearing out his October 23, 2018 affidavit, Defendant Morrison stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the finding of probable cause.

109.  On October 24, 2018, Defendant Zarosly prepared a Case Supplemental Report in which he listed the following items that he allegedly confiscated from 11935 E. Warren:

--2 white plastic containers labeled "MI-69" that contained suspected MDMA
--2 white plastic containers labeled "SPMX69" that contained suspected MDMA
--10 plastic containers labeled "Quinine"  that contained suspected cocaine
--white plastic container labeled "Quinine" that contained suspected cocaine
--white plastic contianer labeled "MI-69" that contained suspected inconclusive substance
--2 plastic containers labeled "Rizzy" containing suspected heroin
--3 white plastic containers labeled "LS-69" containing containing suspected cocaine
--white container labled "MI-69" containing suspected cocaine
--28 foil packs containing suspected marijuana edibles
--27 small envelopes containing suspeted marijuana edibles
--black grocery bag containing 37 clear vials of marijuana

110.  Many of the items listed on Defendant Zarosly's Case Supplemental Report were not listed on the search warrant tabulation and return for 11935 E. Warren.

111.  Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Zarosly knew or should have known that the items that he falsely alleged to be MDMA, cocaine and heroin were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

112.  In completing his Case Supplemental Report, Defendant Zarosly stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

113.  On October 24, 2018, Defendant Mosley prepared a Case Supplemental Report in which he stated that he allegedly confiscated "8

storage bags of marijuana and 3 vacuum sealed bags of marijuana" from 11935 E. Warren.

114. None of the items listed on Defendant Mosley's Case Supplemental Report were listed on the search warrant tabulation and return for 11935 E. Warren.

115. On October 24, 2018, Defendant Benitez prepared a Case Supplemental Report in which he listed the following items that he allegedly confiscated from 11935 E. Warren:

-- 7 white plastic containers marked "SPMX69" that contained suspected MDMA
--2 white plastic containers marked "PS69" containing suspected cocaine
--2 white plastic containers marked "quinine" containing suspected cocaine
--"Swisher Sweets" cigar box containing a knotted 2 knotted sandwich bags of suspected cocaine
--2 plastic containers marked "MI69" containing suspected cocaine
as well as,
--3 black digital scales and "Goodsense sandwich bag boxes

116. Many of the items listed on Defendant Benetiz's Case Supplemental Report were not listed on the search warrant tabulation and return for 11935 E. Warren.

117. Based on his training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Benitez knew or should have known that the items that he falsely alleged to be MDMA and cocaine were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

118.  In completing his Case Supplemental Report, Defendant Benitez stated deliberate falsehoods, showed reckless disregard for the truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

119.  On October 24, 2018, Defendant Gaines prepared a Case Supplemental Report in which she listed the following items that she allegedly confiscated from 11935 E. Warren: "1 Red Swisher Sweet box containing 2 knotted bags of marijuana, 7 knotted bags containing cocaine, 1 zip lock containing cocaine and 2 knotted bags containing heroin and 1 digital scale with cocaine residue on the scale . . ."

120.  The marijuana listed on Defendant Gaines' Case Supplemental Report was not listed on the search warrant tabulation and return for 11935 E. Warren.

121.  Based on her training and experience as an officer working with the City's Narcotics Enforcement Section/Major Violators Unit, Defendant Gaines knew or should have known that the items that she falsely alleged to be cocaine and heroin were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

122.  In completing her Case Supplemental Report, Defendant Gaines stated deliberate falsehoods, showed reckless disregard for the

truth and omitted information, all of which was material to the arrest, detention and indictments of Plaintiffs.

123. On October 24, 2018, Defendant Jackson prepared a Case Supplemental Report in which he listed items that he allegedly confiscated from 11935 E. Warren, including the following: "1 black crate with yellow top containing 8 large knotted bags of marijuana, 3 large zip locks containing marijuana and 1 vacuum sealed bag containing marijuana . . ."

124. None of the items listed on Defendant Jackson's Case Supplemental Report were listed on the search warrant tabulation and return for 11935 E. Warren.

**Federal Indictment and Forfeiture Proceedings**

125. On October 24, 2018, a federal criminal complaint was issued against Plaintiffs for conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C §§ 841(a)(1), 846.

126. The federal criminal complaint was supported by the October 24, 2018 affidavit of Defendant Philip Rodriguez, who attested that he spoke with Defendant Morrison on October 23, 2018 and Defendant Morrison stated that he "received information from a fellow narcotics officer that 11935 E. Warren Avenue has been selling heroin for years and that a Detroit Police Department Confidential Informant had recently been inside

the location and observed heroin being sold from behind the counter by a heavy-set Arabic male."

127.  The above statement made by Defendant Morrison to Defendant Rodriguez was based on Defendants Morrison's and Benitez's deliberate falsehoods and reckless disregard for the truth.

128.  Defendant Rodriguez's October 24, 2018 affidavit also included Defendant Morrison's allegations that he observed several suspected narcotic transactions at 11935 E. Warren Avenue, which was a deliberate falsehood and a reckless disregard for the truth.

129.  Defendant Rodriguez's October 24, 2018 affidavit stated that, on October 22, 2018, a search warrant was executed at 11935 E. Warren in Detroit at which time they seized various alleged narcotic substances, including "7,495.2 grams of cocaine base (later field tested positive for cocaine);" "2,270.2 grams of heroin (later field tested positive for heroin);" and "5,401.3 grams of MDMA (later field tested positive for MDMA)"

130.  Based on his training and experience as an officer assigned to the Drug Enforcement Administration Task Force, Defendant Rodriguez knew or should have known that the items that he falsely alleged to be controlled substances were not actually controlled substances and were actually just cutting agents, which are not illegal substances.

131.  Defendant Rodriguez's October 24, 2018 affidavit stated that he believed that probable cause existed that Plaintiffs knowingly and intentionally conspired to distribute and to possess with intent to distribute controlled substances, namely 7.5 gross kilograms of cocaine base; 2.27 kilograms of heroin; and 5.4 gross kilograms of MDMA-Ecstasy, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, which was a deliberate falsehood and a reckless disregard for the truth.

132. A Detention hearing was held on November 1, 2018 before United States District Court Magistrate Judge Mona Majzoub.

133. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth that the substances that they seized from 11935 E. Warren Avenue were cocaine, heroin, and MDMA (ecstasy), Magistrate Judge Majzoub concluded that the street value of the alleged narcotics was so substantial that bond was not warranted and ordered that Plaintiffs be detained.

134. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, an indictment was filed against Plaintiffs on November 13, 2018 charging Plaintiffs with (1) conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846;

(2) possess with intent to distribute controlled substances, aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 18 U.S.C. §2.

135. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, forfeiture proceedings were initiated against Plaintiffs pursuant to 21 U.S.C. §853, in which the property subject to forfeiture included, but was not limited to: (a) $159,607.00 in U.S. Currency; (b) $241,223.00 in U.S. Currency; (c) $2,474.00 in U.S. Currency; (d) $40,000.00 in U.S. Currency; and (e) a 9mm pistol, 2 magazines and ammunition.

136. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, state forfeiture proceedings were initiated against Plaintiffs in which the property subject to forfeiture included, but was not limited to: (a) two (2) 2016 GMC Yukon vehicles; (b) 2017 GMC Acadia vehicle; (c) 2018 GMC Yukon vehicle; (d) 2009 Dodge Nitro vehicle; (e) $40,000.00 in U.S. Currency; (f) $773.00 in U.S. Currency; (g) $1,602.00 in U.S. Currency; (h) $2,474.00 in U.S. Currency; (i) $470.00 in U.S. Currency; (j) $1,595.00 in U.S. Currency; (k) $241,233.00 in U.S. Currency; (l) $394.00 in U.S. Currency; (m) $18,400.00 in U.S. Currency; (n) $135,442.00 in U.S. Currency; and (o)

$4,173.00 in U.S. Currency.

137.  As  a  direct  and  proximate  result  of  Defendants'  deliberate falsehoods  and  reckless  disregard  for  the  truth,  Plaintiffs'  individual  and business checking accounts were frozen.

138.  Subsequently,  the  DEA  conducted  a  laboratory  analysis  of  all substances  seized  at  the  time  of  the  October  22,  2018  raid  and  concluded that none of the substances were narcotics.

### Dismissal of Indictment and Release of Assets

139.  On  June  4,  2019,  the  federal  prosecutor  informed  Plaintiffs' defense  counsel  that  the  lab  results  came  back  negative  for  narcotics  and admitted that the current indictment could not "remain as is" and stated that she would consider whether to amend.

140.  On  June  26,  2019,  the  federal  government  moved  to  dismiss the indictment "for the reason that the ends of justice would best be served by [the] dismissal."

141.  On June 27, 2019, the indictment was dismissed.

142.  On  August  12,  2020,  Wayne  County  Circuit  Court  Judge Mariam  Bazzi  entered  an  order  unfreezing  Plaintiffs'  individual  and business checking accounts.

**<u>Defendants Gaines, Mosley and Williams are Included on
Wayne County's *Giglio-Brady* List</u>**

143.  In July 2020, the Wayne County Prosecutor's Office contacted

all local Police Chiefs, representatives from the Wayne County Sheriff's

Office, Michigan State Police, and Federal agencies for a list of their

current and former officers that have committed offenses detailed in *Giglio*

*v United States*, 405 U.S. 150 (1972) that involve theft, dishonesty, fraud,

false statement, bias, and bribery.[2]

144. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the

prosecutors are charged with informing defense attorneys when an officer

on their witness list for a case has *Giglio* issues or concerns.

145.  Consequently, in July of 2020, Wayne County Prosecutor Kym

Worthy released a *Giglio-Brady* list of current and former officers that have

committed offenses that involve theft, dishonesty, fraud, false statement,

bias, and bribery.

146.  Wayne County Prosecutor Kym Worthy released an updated

*Giglio-Brady* list in December of 2020.

147.  There are currently 52 officers on Wayne County's *Giglio-Brady*

list.

---

[2] These are offenses that can be considered by fact finders in a trial when
credibility is being assessed.

148.   Defendant Joi Gaines is on Wayne County's *Giglio-Brady* list for "False Statement."

149.  Defendant Michael Mosley is on Wayne County's *Giglio-Brady* list for "Fed. Conviction, Bribery."

150.  Defendant Lamar Williams is on Wayne County's *Giglio-Brady* list for "False Statement."

**Plaintiffs' Damages Due to Defendants' Constitutional Violations**

151. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, Plaintiffs were unlawfully arrested, imprisoned, maliciously prosecuted and deprived of due process, for a crime that Defendants knew Plaintiffs did not  commit.

152. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, Plaintiffs were arrested and held at the Wayne County Jail from October 22, 2018 to November 8, 2018.

153. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, Plaintiffs' had substantial personal assets, automobiles, and large sums of cash seized from their businesses and their personal residences.

154. As a direct and proximate result of Defendants' deliberate

falsehoods and reckless disregard for the truth, Plaintiffs were deprived of the use of the seized assets for a significant time period while they were forced to defend forfeiture proceedings and their accounts were frozen until August 12, 2020.

155. As a direct and proximate result of Defendants' deliberate falsehoods and reckless disregard for the truth, Plaintiffs have sustained substantial loss of business income, incurred significant attorney fees and costs for the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them, and have sustained mental anguish,embarrassment, humiliation and/or mortification.

<u>**COUNT I**</u>
<u>**42 U.S.C. 1983 - UNREASONABLE SEARCH, SEIZURE and DETENTION - INDIVIDUAL DEFENDANTS**</u>

156. Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

157. At all times relevant, Plaintiffs had a clearly established right to be free from unreasonable searches, seizures and detention pursuant to the Fourth Amendment to the United States Constitution.

158. At all times relevant, as City of Detroit Police Officers acting under color of law, the Defendant officers were required to obey the laws of

the United States, including those laws identified under the Fourth Amendment to the United States Constitution.

159. In violation of Plaintiffs' clearly established constitutionally protected rights under the Fourth Amendment to the United States Constitution, the Defendant officers unlawfully and without justification, unreasonably and unlawfully searched, seized and detained Plaintiffs, as well as their personal and business assets.

160. Defendant Morrison intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions in his October 22, 2018 and October 23, 2018 affidavits in support of the search warrants in order to justify the unreasonable searches, seizures, and detainment of Plaintiffs and the seizure of their personal and business assets.

161. All of the Defendant officers intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions in their reports in order to justify the unreasonable search, seizure, and detainment of Plaintiffs and seizure of their personal and business assets.

162. Defendant Rodriguez intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material

misrepresentations and/or omissions in his October 24, 2018 affidavit in support of the federal criminal complaint against Plaintiffs.

163. All of the Defendant officers conspired to make false statements, material misrepresentations and/or omissions in their reports in order to justify the unreasonable search, seizure, and detainment of Plaintiffs and seizure of their personal and business assets in violation of their clearly established constitutionally  protected rights under the Fourth Amendment to the United States Constitution.

164. The Defendant officers' search, seizure, detainment and imprisonment of Plaintiffs, as well as the seizure of Plaintiffs' personal and business assets, when they knew or should have known that they lacked justification for the same, was in violation of clearly established law, and the Defendant officers are not entitled to qualified immunity.

165. The intentional seizure, restraint, detention, confinement and imprisonment of Plaintiffs, as well as the seizure of Plaintiffs' personal and business assets, was unreasonable and deprived them of their personal liberty and/or freedom of movement against their will.

166.   As a direct and proximate result of the actions of the Defendant officers, Plaintiffs were confined and imprisoned against their will and were deprived of the use of personal and business assets that

were wrongfully seized.

167. Under the Fourth Amendment, Plaintiffs, as arrestees prior to arraignment, were unlawfully seized.

168. In addition to being in violation of clearly established law, the Defendant officers' actions were objectively unreasonable under the totality of the circumstances and the Defendant officers are not entitled to qualified immunity.

169. Pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the Defendant officers are liable to Plaintiffs for all damages allowed under federal law and the Michigan damages statutes. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

170. The conduct of the Defendant officers was, and remains, extreme and outrageous, subjecting the Defendant officers to punitive damages.

171. As a direct and proximate result of the Defendant officers' violation of Plaintiffs' clearly established constitutionally protected rights, Plaintiffs have suffered and will continue to suffer damage into the future,

-42-

including but not limited to:

    a.  Substantial loss of business income;

    b.  Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

    c.  Loss of use of funds on deposit in bank accounts that were frozen;

    d.  Embarrassment, humiliation and/or mortification;

    e.  Mental anguish;

    f.  Punitive damages;

    g.  Exemplary damages; and,

    h.  All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against all of the Defendant officers and award compensatory and punitive damages in whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

### COUNT II
### 42 U.S.C. 1983 -  MALICIOUS PROSECUTION
###  INDIVIDUAL DEFENDANTS

172. Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

173.  At all times relevant, Plaintiffs had a clearly established right to be free from criminal prosecution without probable cause pursuant to the Fourth Amendment to the United States Constitution.

174.  At all times relevant, as City of Detroit Police Officers acting under color of law, the Defendant officers were required to obey the laws of the United States, including those laws identified under the Fourth Amendment to the United States Constitution.

175.  In violation of Plaintiffs' clearly established constitutionally protected rights under the Fourth Amendment to the United States Constitution, the Defendant officers subjected Plaintiffs to an unjustified, malicious criminal prosecution.

176.  The Defendant officers influenced and/or participated in the prosecution against Plaintiffs when they intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions as outlined above.

177.  There was no probable cause to prosecute Plaintiffs.

178.  The Defendant officers acted in concert to accomplish the unlawful prosecution of Plaintiffs without probable cause.

179.  The Defendant officers acted together to prosecute Plaintiffs for alleged crimes for which Defendants knew or had reason to know were

without probable cause.

180.  Plaintiffs suffered a deprivation of liberty as a consequence of the frivolous legal proceedings because they were imprisoned and were deprived of the use of personal and business assets that were wrongfully seized.

181.  The criminal proceedings were ultimately resolved in Plaintiffs' favor when the DEA confirmed that, contrary to the Defendant officers' false assertions, none of the substances seized at the time of the October 22, 2018 raid were illegal drugs and the indictment was dismissed and the Plaintiffs' seized assets were eventually returned.

182.  In addition to being in violation of clearly established law, the Defendant officers' actions were objectively unreasonable under the totality of the circumstances and the Defendant officers are not entitled to qualified immunity.

183.  Pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the Defendant officers are liable to Plaintiffs for all damages allowed under federal law and the Michigan damages statutes. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as

to satisfy any and all such inadequacies.

184. The conduct of the Defendant officers was, and remains, extreme and outrageous, subjecting Defendants to punitive damages.

185. As a direct and proximate result of the Defendant officers' violation of Plaintiffs' clearly established constitutionally protected rights, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to:

   a. Substantial loss of business income;

   b. Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

   c. Loss of use of funds on deposit in bank accounts that were frozen;

   d. Embarrassment, humiliation and/or mortification;

   e. Mental anguish;

   f. Punitive damages;

   g. Exemplary damages; and,

   h. All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against the Defendant officers and award compensatory and punitive damages in

whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

## COUNT III
## 42 U.S.C. 1983 - DENIAL OF DUE PROCESS
## INDIVIDUAL DEFENDANTS

186. Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

187.  At all times relevant, Plaintiffs had a clearly established right to be free from deprivation of life, liberty, or property pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

188.  At all times relevant, as City of Detroit Police Officers acting under color of law, the Defendant officers were required to obey the laws of the United States, including those laws identified under the Fifth and Fourteenth Amendments to the United States Constitution.

189. In violation of Plaintiffs' clearly established constitutionally protected rights under the Fifth and Fourteenth Amendments Amendment to the United States Constitution, the Defendant officers intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions as outlined above.

190.  Defendants' deliberate falsehoods, reckless disregard for the truth and omission of information, were material to the arrest, detention and indictments of Plaintiffs.

191.  There was no probable cause to prosecute Plaintiffs.

192.  Defendants' deliberate falsehoods, reckless disregard for the truth and omission of information prejudiced the Plaintiffs.

193.  The Defendant officers acted in concert to accomplish the unlawful prosecution of Plaintiffs without probable cause.

194.  The Defendant officers acted together to prosecute Plaintiffs for alleged crimes for which Defendants knew or had reason to know were without probable cause.

195.  In addition to being in violation of clearly established law, the Defendant officers' actions were objectively unreasonable under the totality of the circumstances and the Defendant officers are not entitled to qualified immunity.

196.  Pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the Defendant officers are liable to Plaintiffs for all damages allowed under federal law and the Michigan damages statutes. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter the

Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

197. The conduct of the Defendant officers was, and remains, extreme and outrageous, subjecting Defendants to punitive damages.

198. As a direct and proximate result of the Defendant officers' violation of Plaintiffs' clearly established constitutionally protected rights, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to:

     a. Substantial loss of business income;

     b. Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

     c. Loss of use of funds on deposit in bank accounts that were frozen;

     d. Embarrassment, humiliation and/or mortification;

     e. Mental anguish;

     f. Punitive damages;

     g. Exemplary damages; and,

     h. All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against the Defendant officers and award compensatory and punitive damages in

whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

**COUNT IV**
**42 U.S.C. 1983 - CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL RIGHTS - DEFENDANT CITY**

199. Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

200. At all times relevant, there was a clear and consistent pattern of corruption and misconduct within the City of Detroit Police Department's narcotics operations, which included, but was not limited to, routinely falsifying affidavits to support search warrants, falsely accusing citizens of possessing and/or selling drugs, as well as unlawfully stealing and/or seizing property obtained from searches.

201. The above-described pattern of corruption and misconduct within the City of Detroit Police Department's narcotics operations was so pervasive that there have been a series of internal probes.[3]

202.    Former Detroit Police Officer Charles Flanagan ran the former Narcotics Section from 2013 to 2015 and stated that, when he took over

---

[3]
https://www.detroitnews.com/story/news/local/detroit-city/2019/08/22/detroit-cops-seize-drug-records-amid-internal-probe/2084344001/

the unit, he found "problems that existed long before [he] got there."[4]

203. Flanagan reported to Chief Craig that he had uncovered numerous issues of corruption, including falsification of evidence, and that most of the problems that he encountered had existed for years.

204. On August 22, 2019, a team of Detroit Police investigators and FBI agents seized records and computer data as part of an ongoing internal probe into allegations of corruption in the department's drug operations. See footnote 1, *supra*.

205. Detroit Police Chief James Craig stated that he initiated the August 22, 2019 seizure due to corruption that has long been part of the narcotics operation. *Id.*

206. Detroit Police Chief James Craig disbanded the former narcotics unit in July of 2014 due to systemic violations and renamed the narcotics operation the "Major Violators Section" due to the rampant corruption. *Id.*

207. Following the 2014 disbandment, the corruption of the Detroit Police Department's narcotics operation continued. *Id.*

208. The corruption included officers planting evidence, lying to

---

4

https://www.detroitnews.com/story/news/local/detroit-city/2019/12/11/detroit-police-probe-uncovers-widespread-alleged-corruption-drug-unit/4398321002/

prosecutors in search warrant affidavits, robbing dope dealers and embezzling funds. See footnote 2, *supra*.

209. Detroit Police Chief James Craig has admitted that there is a pattern and practice of criminal misconduct in the narcotics unit. *Id.*

210. At all times relevant, the City of Detroit, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and consistent pattern of corruption and misconduct within the City of Detroit Police Department's narcotics operations  as described in the preceding paragraph and that such corruption and misconduct violated citizens' clearly established constitutionally protected rights to due process and to be free from criminal prosecution without probable cause.

211. At all times relevant, the City of Detroit was on notice that there was a clear and persistent pattern of corruption and misconduct within the City of Detroit Police Department's narcotics operations as described in the preceding paragraph and that such corruption and misconduct violated citizens' clearly established constitutionally protected rights to due process and to be free from criminal prosecution without probable cause.

212. For many years before the subject incident, the City of Detroit and its policy makers acquiesced in and tolerated the corruption and

misconduct within the narcotics' unit that gave rise to the narcotics officers routinely falsifying affidavits to support search warrants and falsely accusing citizens of possessing and/or selling drugs, which allowed the narcotics officers to continue to engage in the unlawful behavior.

213. At all times relevant, the City of Detroit, through its appointed officials, employees, agents and/or representatives, knew or should have known that the training and supervision of its narcotics officers was inadequate for the tasks that the narcotics officers were performing, as described in the preceding paragraphs.

214. At all times relevant to this lawsuit, the City of Detroit had a custom or practice within its narcotics' unit of failing to adequately train and/or supervise its officers.

215. These failures to adequately train and/or supervise were evident by the years and years of narcotics officers' corruption and misconduct that went unnoticed and undisciplined by the City of Detroit.

216. The City of Detroit's custom or practice of tolerating its narcotics officers' corruption and misconduct, as well as its failure to adequately train and/or supervise, acted as the "moving force" behind the deprivation of Plaintiffs' clearly established constitutional rights.

217. There is a direct causal link between the City of Detroit's

customs and/or practices and the injuries that Plaintiffs have suffered.

218.  As a direct and proximate result of the City of Detroit's custom or practice of tolerating the narcotics officers' violation of the citizens' clearly established constitutionally protected rights to due process and to be free from criminal prosecution without probable cause, the individual Defendants subjected Plaintiffs to an unjustified, malicious criminal prosecution and deprived Plaintiffs of due process when they intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions in the search warrant and affidavit.

219.  As a direct and proximate result of the City of Detroit's custom or practice of tolerating the officers' violation of the citizens' clearly established constitutionally protected rights to due process and to be free from criminal prosecution without probable cause, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to:

    a.  Substantial loss of business income;

    b.  Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

    c.  Loss of use of funds on deposit in bank accounts that were frozen;

d.  Embarrassment, humiliation and/or mortification;

e.  Mental anguish;

f.   Punitive damages;

g.  Exemplary damages; and,

h.  All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against Defendant City of Detroit and award compensatory and punitive damages in whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

**COUNT V**
**STATE LAW MALICIOUS PROSECUTION**
**INDIVIDUAL DEFENDANTS**

220.  Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

221.  The Defendant officers influenced and/or participated in the prosecution against Plaintiffs when they intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions as outlined above.

222.  The Defendant officers instituted and initiated the allegations of

criminal activity against Plaintiffs without probable cause and with malice or with a primary purpose other than bringing about justice through the proper adjudication of the claim.

223.   The Defendant officers pursued these actions knowing the allegations were inconsistent, without corroboration, and had been tainted by improper means.

224.   The criminal proceedings were ultimately resolved in Plaintiffs' favor when the DEA confirmed that, contrary to the Defendant officers' false assertions, none of the substances seized at the time of the October 22, 2018 raid were illegal drugs and the indictment was dismissed and the Plaintiffs' seized assets were eventually returned.

225.   As a direct and proximate result of the Defendant officers' misconduct, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to:

      a.  Substantial loss of business income;

      b.  Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

      c.  Loss of use of funds on deposit in bank accounts that were frozen;

      d.  Embarrassment, humiliation and/or mortification;

      e.  Mental anguish;

    f.  Punitive damages;

    g.  Exemplary damages; and,

    h.  All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against the Defendant officers and award compensatory damages in whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**INDIVIDUAL DEFENDANTS**

226. Plaintiffs hereby incorporate by reference each of the allegations contained in previous paragraphs as though fully set forth herein.

227. The Defendant officers intentionally and deliberately, or with a reckless disregard for the truth, made false statements, material misrepresentations and/or omissions in order to justify the unreasonable search, seizure, and detainment of Plaintiffs and the seizure of their personal and business assets.

228. The actions of Defendant officers were intentional, extreme, and outrageous.

229. Plaintiffs suffered severe emotional distress as a result of the

unreasonable search, seizure, and detainment of Plaintiffs and the seizure of their personal and business assets.

230. As a direct and proximate result of the Defendant officers' extreme and outrageous misconduct, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to:

    a.  Substantial loss of business income;

    b.  Attorney fees and costs incurred in the defense of the frivolous criminal charges and forfeiture proceedings prosecuted against them;

    c.  Loss of use of funds on deposit in bank accounts that were frozen;

    d.  Embarrassment, humiliation and/or mortification;

    e.  Mental anguish;

    f.  Punitive damages;

    g.  Exemplary damages; and,

    h.  All other damages properly recoverable under law.

WHEREFORE, Plaintiffs, Steven and Alexander Putrus, respectfully request this Honorable Court enter a judgment in their favor against the Defendant officers and award compensatory in whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

Respectfully submitted,

*/s/Heather A. Glazer*
HEATHER A. GLAZER (P-54952)
ROBERT M. GIROUX (P-47966)
Attorneys for Plaintiffs
28588 Northwestern Hwy, Suite 100
Southfield, MI 48034
(248) 531-8665

Dated:  June 3, 2021   hglazer@greatMIattorneys.com
rgiroux@greatMIattorneys.com

## JURY DEMAND

Plaintiffs, Steven and Alexander Putrus, through their attorneys, Giroux Trial Attorneys, P.C., hereby demand Trial by Jury in this matter.

Respectfully submitted,

*/s/Heather A. Glazer*
HEATHER A. GLAZER (P-54952)
ROBERT M. GIROUX (P-47966)
Attorneys for Plaintiffs
28588 Northwestern Hwy, Suite 100
Southfield, MI 48034
(248) 531-8665

Dated:  June 3, 2021   hglazer@greatMIattorneys.com
rgiroux@greatMIattorneys.com